**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X   **Docket No.:**

LISA REPETTO,

*Plaintiff,*     **COMPLAINT**

– against –

         ***PLAINTIFF DEMANDS***
CHICO'S   RETAIL   SERVICES,   INC.,  ***A TRIAL BY JURY***
PATTIANNE CONTRERAS, *In Her Individual*
and   *Official   Capacities,   and*   CAROLYN
GILLBERT,   *In   Her   Individual   and   Official*
*Capacities,*

*Defendants.*

-------------------------------------------------------------X

PLAINTIFF, LISA REPETTO, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys

at Law, PLLC, hereby complains of DEFENDANTS, upon information and belief, as follows:

## NATURE OF THE CASE

1. PLAINTIFF complains pursuant to The Americans with Disabilities Act of 1990, 42

U.S.C. §§ 12101, *et seq*. ("ADA"); New York State Human Rights Law, NYS Executive

Law §§ 296, *et seq*. ("NYSHRL"); and the New York City Human Rights Law, New York

City Administrative Code §§ 8-107, *et seq*. ("NYCHRL"); and seeks damages to redress

the injuries PLAINTIFF suffered as a result of being **Discriminated** and **Retaliated**

against on the basis of her **disabilities and/or perceived disabilities**.

2. Plaintiff is employed by DEFENDANT CHICO'S RETAIL SERVICES, INC. as a Sales

Associate.

3. PLAINTIFF suffers from disabilities - myopia and astigmatism in her eyes. PLAINTIFF

is near-sighted.

4.      As a result of her disabilities, PLAINTIFF notified DEFENDANTS of her disabilities at the onset of her employment and made multiple requests for a reasonable accommodation and continues to regularly make requests.

5.      Despite DEFENDANTS being aware of PLAINTIFF'S disabilities when she began her employment, DEFENDANTS have continued to create a hostile work environment by openly mocking PLAINTIFF about her near-sightedness on an almost daily basis.

6.      DEFENDANTS frequently comment on how PLAINTIFF cannot see and needs to "get better glasses" or to "go to an eye doctor" because she "can't see."

7.      PLAINTIFF repeatedly told DEFENDANTS to stop mocking her disability and stop reminding her that she could not see.

8.      PLAINTIFF asked for multiple accommodations, either not being required to do tasks that involved reading extremely small numbers, to be able to zoom in on the numbers when they were displayed on the company iPad or increase the font size on printed documents.

9.      DEFENDANTS refused to allow PLAINTIFF to zoom in on the small numbers, despite the iPad having the ability to do so.

10.     Every time DEFENDANTS would mock or comment of PLAINTIFF'S disabilities, she would object and state that they were discriminating against PLAINTIFF.

11.     Ultimately, PLAINTIFF was removed from the schedule due to her complaints of discrimination and because DEFENDANTS refused to make a reasonable accommodation.

12.     PLAINTIFF was also placed on a retaliatory Performance Improvement Plan and forced to sign a document, with which she did not agree, stating that she could not see, which threatened her employment.

13.     PLAINTIFF was told that if she was unable to improve – see small fonts – to do certain

functions, which she would be able to do with a reasonable accommodation, DEFENDANTS would terminate her employment.

14.   DEFENDANTS refused to make a reasonable accommodation for PLAINTIFF yet expected her to perform certain functions or terminate her employment.

15.   DEFENDANTS callously discriminated against PLAINTIFF and retaliated against her for requesting a reasonable accommodation and complaining of discrimination.

16.   PLAINTIFF brings this action charging that DEFENDANTS, collectively and/or individually, wrongfully subjected PLAINTIFF to discrimination, a hostile work environment, and retaliation based on her disabilities, perceived disabilities and for seeking a reasonable accommodation.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

17.   Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101, et seq., and 28 U.S.C. §§ 1331 and 1343.

18.   The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought under state and city law pursuant to 28 U.S.C. § 1367.

19.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more DEFENDANTS reside within the Southern District of New York or the acts complained of occurred therein.

20.   By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 15, 2019; (b) receiving a Notice of Right to Sue from the EEOC on December 16, 2019; (c) attempting to commence this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously attempting to file this Complaint, mailing a copies thereof to the New York City

Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.

21.    A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

22.    A copy of the transmittal letter to the NYCCHR, et ano., is annexed hereto as Exhibit B.

**PLAINTIFF WAS PREVENTED FROM FILING HER TITLE VII CLAIMS WITHIN 90 DAYS OF RECEIPT OF THE NOTICE OF RIGHT TO SUE DUE TO CONDUCT OF THE DEFENDANTS**

23.    PLAINTIFF received a Notice of Right to Sue, dated 12/6/2019, on December 16,2019.

24.    On 12/19/2019, PLAINTIFF forwarded the Notice of Right to Sue to Counsel for Defendants and advised them that PLAINTIFF was about to move forward with filing this Federal Complaint. PLAINTIFF provided DEFENDANTS with an opportunity to resolve this matter prior said commencement of this Action.

25.    DEFENDANTS expressed interest in settling this matter and engaged in active settlement negotiations with Counsel for PLAINTIFF thereafter.

26.    As a result of what appeared to be a good faith attempt to settle this case, PLAINTIFF advised DEFENDANTS that she would stall the filing of this Complaint, but the matter had to be resolved within 90 days to avoid the commencement of this Action given the EEOC'S Notice of Right to Sue letter/date.

27.    DEFENDANTS continued to express interest in resolving the matter within the 90-day timeframe prescribed by the EEOC and PLAINTIFF continued to forestall the commencement of this Action as a result. The Parties then engaged in active settlement negotiations.

28.     On or about March 1, 2020, prior to the expiration of the 90-day deadline, PLAINTIFF
notified DEFENDANTS that she could not continue to stall the filing of her complaint as
the 90-day deadline was fast approaching. Soon thereafter, the Parties actually settled this
Case in principal for an amount certain and other certain negotiated terms and conditions,
including that PLAINTIFF would resign from her employment at DEFENDANT
CHICO'S.

29.     At this time, 3/2/2020, this Matter was settled in principal and PLAINTIFF began to act on
her promises in reliance upon the agreement between the Parties. As a direct result of
settlement, PLAINTIFF began acting in reliance upon the settlement agreement and
resigned from her employment and/or started using her accumulated days off. PLAINTIFF
did not return to CHICO'S thereafter in direct reliance upon the settlement.

30.     On 4/20/2020, to PLAINTIFF'S surprise, Counsel for DEFENDANTS contacted Counsel
for PLAINTIFF and advised PLAINTIFF that DEFENDANTS were reneging on the
Agreement and would not pay same.

31.     At first, on 4/20/2020, Counsel for DEFENDANTS indicated that they could not pay the
settlement for several months due to the COVID-19 pandemic. DEFENDANTS first asked
to delay the payment, which PLAINTIFF was considering. But then, on 5/4/2020, to
PLAINTIFF'S further surprise, DEFENDANTS stated that they would not honor the
Agreement altogether and attempted to renegotiate the previously agreed upon terms.
Specifically, DEFENDANTS tried to alter the agreement and offered to pay only 26% of
the agreed upon amount.

32.     By this time, 5/4/2020, PLAINTIFF already acted (or declined to act) in reliance upon the
Agreement and declined to accept a substantially reduced payment/settlement.

PLAINTIFF raised objections to DEFENDANT'S position given that DEFENDANTS took their actions (in bad faith) after the 90-day Notice of Right to Sue expired. PLAINTIFF believed that the DEFENDANTS' conduct, including their delays, were taken in bad faith and advised DEFENDANTS that she must move forward with this Action if they did not intend to honor the agreement. PLAINTIFF also agreed to accept a reduced amount in an effort to advance the settlement, but DEFENDANTS rejected PLAINTIFF'S good faith proposal.

33.    DEFENDANTS told PLAINTIFF to move forward with the Action and PLAINTIFF had no choice but to file this Complaint.

34.    PLAINTIFF'S filing of the Complaint at this time, and failure to file at a previous date, was based on PLAINTIFF'S justifiable reliance that this matter was settled.

## PARTIES

35.    At all times relevant hereto, **PLAINTIFF LISA REPETTO (hereinafter, "REPETTO")** is a 60-year-old female, who is a resident of the State of New York, Richmond County. At all times relevant, PLAINTIFF has been employed by DEFENDANT, CHICO'S RETAIL SERVICES, INC. as a Sales Associate. PLAINTIFF suffers from disabilities in that she has myopia and astigmatism in her eyes.

36.    At all times relevant hereto, **DEFENDANT CHICO'S RETAIL SERVICES, INC. (hereinafter, "CHICO'S")** is a foreign business corporation with its principal place of business located at 11215 Metro Parkway, Fort Myers, Florida 33966. DEFENDANT CHICO'S is a women's fashion retail store with several locations. The location at issue is at 2655 Richmond Avenue, Ste. 2610, Staten Island, New York 10314. DEFENDANT CHICO'S employs more than 15 employees.

37. Upon information and belief, **DEFENDANT PATTIANNE CONTRERAS (hereinafter "CONTRERAS")** is/was, at all times relevant to this case, PLAINTIFF'S direct supervisor and a manager, who had the ability to make decisions regarding the terms and conditions of PLAINTIFF'S employment. DEFENDANT CONTRERAS is being sued herein in her individual and official capacities.

38. Upon information and belief, **DEFENDANT CAROLYN GILLBERT (hereinafter "GILLBERT")** is/was, at all times relevant to this case, PLAINTIFF'S direct supervisor and a manager, who had the ability to make decisions regarding the terms and conditions of PLAINTIFF'S employment. DEFENDANT GILLBERT is being sued herein in her individual and official capacities.

39. **DEFENDANTS, CONTRERAS and GILLBERT**, are sometimes referred to as **"INDIVIDUAL DEFENDANTS."**

40. **DEFENDANTS, CHICO'S, CONTRERAS, and GILLBERT, are collectively referred to as "CHICO'S DEFENDANTS."**

<u>**MATERIAL FACTS**</u>

41. PLAINTIFF was employed by DEFENDANT CHICO'S on or about October 22, 2015, as a Sales Associate, earning $15.00 per hour.

42. PLAINTIFF was an above-satisfactory performer and was otherwise qualified for her position.

43. PLAINTIFF is near-sighted, and has myopia and astigmatism in her eyes, which are disabilities as they affect one or more of her major life functions.

44. But, at all times, PLAINTIFF was able to fulfill all of her work-related duties with or without reasonable accommodations.

7

45.   At all times, DEFENDANTS knew or perceived PLAINTIFF as having a disability.

46.   PLAINTIFF informed DEFENDANTS that she was near-sighted immediately upon being hired.

47.   Within two months of PLAINTIFF being hired and notifying DEFENDANTS that she was near-sighted, PLAINTIFF'S manager, Cathy [last name unknown] ("Manager Cathy"), began to make discriminatory comments regarding PLAINTIFF'S ability to see.

48.   Manager Cathy would frequently tell PLAINTIFF that she "could not see" in front of customers and coworkers.

49.   In or around March 2017, Manager Cathy brought PLAINTIFF to tears after telling her that she was unable to see.

50.   PLAINTIFF requested that certain documents with a small font be zoomed in on the iPad screen to allow PLAINTIFF to read the print or alternatively, be printed in a larger font.

51.   Generally, iPad screens have the capability of zooming in on small font within documents.

52.   Manager Cathy refused, despite the computer program having the capability to zoom in on documents to enlarge the print.

53.   PLAINTIFF requested the reasonable accommodation of having a document enlarged.

54.   Manager Cathy not only refused to accommodate PLAINTIFF, but openly mocked her disability and told her that it was "impossible," knowing that this was not true.

55.   PLAINTIFF left the incident crying because of the humiliation Manager Cathy had caused her.

56.   DEFENDANTS could have reasonable accommodated PLAINTIFF with no undue burden.

57.   DEFENDANTS refused to reasonable accommodate PLAINTIFF.

58.   DEFENDANTS were on notice that PLAINTIFF needed a reasonable accommodation.

59.   DEFENDANTS refused to engage in any form of interactive process regarding PLAINTIFF'S reasonable accommodation request.

60.   As Manager Cathy was PLAINTIFF'S direct supervisor, DEFENDANT CHICO'S is vicariously liable for her discriminatory treatment of PLAINTIFF.

61.   PLAINTIFF'S managers, DEFENDANT CONTRERAS, DEFENDANT GILLBERT, and Manager Cathy continuously mocked PLAINTIFF'S disabilities and refused her requests for reasonable accommodations.

62.   DEFENDANT CONTRERAS, DEFENDANT GILLBERT, and Manager Cathy created a hostile work environment for PLAINTIFF.

63.   Each time DEFENDANT CONTRERAS, DEFENDANT GILLBERT, and Manager Cathy mocked PLAINTIFF for her disabilities, PLAINTIFF would immediately object, tell them to stop, and complain that they were discriminating against her.

64.   In or around April 2017, DEFENDANT GILLBERT and Manager Cathy continued their discriminatory harassment and hostile work environment against PLAINTIFF by continuing to make comments about PLAINTIFF'S alleged inabilities to see small print and rolling their eyes at PLAINTIFF when she had problems viewing the small print on merchandise.

65.   Each time DEFENDANTS made a comment, PLAINTIFF would request that they stop mocking her because of her disability.

66.   In or around May 2017, DEFENDANTS retaliated against PLAINTIFF for requesting a reasonable accommodation by reducing her scheduled hours and only scheduled her at night when the store was not busy.

67.   PLAINTIFF immediately complained that DEFENDANTS did this because of her

disability.

68.  PLAINTIFF told DEFENDANTS that she could perform her duties with limited accommodation, such as not being required to locate items at other stores and not doing inventory because of the very small font used to record what items are in the store because DEFENDANTS refused to allow PLAINTIFF to use the zoom function on the iPad used for inventory.

69.  PLAINTIFF could have located items at other stores and done inventory if DEFENDANTS had allowed her to use the zoom function or to print the documents in a larger font, both of which were technologically possible.

70.  PLAINTIFF was fully capable of making sales, interacting with customers, and using the cash register without any accommodation.

*71.*  DEFENDANTS told PLAINTIFF that she should take the hours they gave her because she ***"can't see."***

72.  PLAINTIFF felt demeaned and embarrassed by DEFENDANTS' constant comments stating that she could not see.

*73.*  In or around June 2017, DEFENDANTS escalated the hostile work environment and began telling PLAINTIFF that she needed to "***get better glasses***" and to ***"go to an eye doctor"*** because she ***"can't see."***

74.  Again, instead of attempting to accommodate PLAINTIFF'S disability, DEFENDANTS mocked PLAINTIFF and refused to engage in any form of the interactive process.

75.  PLAINTIFF reiterated that she could see and needed only mild accommodations and that she was able to complete her job functions.

76.  PLAINTIFF continued to complain to DEFENDANT CONTRERAS each time her

managers mocked her disability.

77.   In or around July 2017, PLAINTIFF met with DEFENDANT CONTRERAS, DEFENDANT GILLBERT, and Manager Cathy for her annual evaluation.

78.   DEFENDANTS praised PLAINTIFF by telling her that she was a great seller and was doing a great job in her position.

79.   However, DEFENDANTS' praise for PLAINTIFF'S good work was short-lived as they immediately told PLAINTIFF that the ***"fact still remains, you can't see numbers so all you are good for is to sell."***

80.   This statement was inaccurate.

81.   PLAINTIFF again explained that she could only not see the small printed numbers, but was able to complete all her functions, including working at the cash register.

82.   PLAINTIFF only needed to be accommodated by either zooming in on small font, having a printed document with a larger font size, or to not perform duties involving the small print.

83.   Again, DEFENDANTS made no attempt to reasonably accommodate PLAINTIFF nor engage in any form of interactive process regarding her requests for a reasonable accommodation.

84.   Instead, DEFENDANTS continued to retaliate and reprimand PLAINTIFF for her disability.

85.   In or around August 2017, as DEFENDANT CONTRERAS, DEFENDANT GILLBERT, and Manager Cathy continued to constantly comment on PLAINTIFF'S disability and continued to fail to reasonably accommodate her, PLAINTIFF complained to DEFENDANTS and told them that she did not want to hear them mock her disability

during every shift. PLAINTIFF stated that everyone knew that she was nearsighted and that it was the end of the story.

86.    PLAINTIFF was embarrassed and exhausted by DEFENDANTS constantly reminding her of her disability.

87.    PLAINTIFF'S embarrassment and exhaustion were exacerbated by the fact that not only was she constantly being reminded of her disability, but DEFENDANTS were refusing to accommodate or engage in any interactive process regarding a reasonable accommodation.

88.    Despite PLAINTIFF'S pleas to stop consistently pointing out her disability, DEFENDANTS continued to create a hostile work environment and frequently referenced or mocked PLAINTIFF'S disability.

89.    In or around September 2017, PLAINTIFF became so embarrassed that her supervisors were mocking her disability and telling her that she could not see, she complained to DEFENDANTS about the discrimination and asked, again, why the small print could not be enlarged as was done with other companies.

90.    Again, DEFENDANTS told PLAINTIFF that they would not enlarge the print.

91.    DEFENDANTS did not offer any other form of reasonable accommodation.

92.    DEFENDANTS knew that PLAINTIFF complained of the hostile work environment and about the constant discriminatory comments.

93.    DEFENDANTS did not investigate PLAINTIFF'S complaints of a hostile work environment.

94.    From in or around October 2017 through in or around January 2018, DEFENDANTS continued to create a hostile work environment for PLAINTIFF by making comments such as, "*Why do you wear contacts and glasses, wow you really can't see,*" and "*go get your*

*glasses so you can see the sheets*," never letting PLAINTIFF forget that she was nearsighted.

95.    Each time one of PLAINTIFF'S supervisors commented on PLAINTIFF not being able to see, she would protest and say that she could see and only needed mild accommodations to perform all her functions, the enlargement of certain numbers printed in a very small font.

96.    On one occasion, DEFENDANT CONTRERAS yelled at PLAINTIFF to just ***"read it,"*** referring to the fine print on an item of clothing, in front of a customer.

97.    The customer appeared outwardly embarrassed because DEFENDANT CONTRERAS snapped at PLAINTIFF, and immediately said that reading the number was not necessary and left the store.

98.    PLAINTIFF was mortified that DEFENDANT CONTRERAS had yelled at PLAINTIFF because of her disability in front of a customer.

99.    In or around February 2018, the CHICO'S location in which PLAINTIFF worked was in the process of becoming an outlet store.

100.   All of the District Managers came to the store on the same day.

101.   Before the District Managers arrived, DEFENDANT GILLBERT told PLAINTIFF that she needed to make sure that she ***"could see what she was doing,"*** because the District Managers would ***"notice"*** if PLAINTIFF could not see.

102.   PLAINTIFF, embarrassed by the apparent threat of the District Manager noticing that PLAINTIFF was nearsighted, asked DEFENDANT GILLBERT why she "*was ashamed of [PLAINTIFF]?"*

103.   This interaction again incredibly upset PLAINTIFF because her direct manager appeared

ashamed that she had an employee who had disabilities.

104. Additionally, the District Managers should have already known about PLAINTIFF'S disabilities because her supervisors, to whom she complained about discrimination and requested a reasonable accommodation, should have forwarded her complaints and requests to the appropriate District Manager.

105. DEFENDANTS, CONTRERAS and GILLBERT, did not forward PLAINTIFF'S complaints or requests for reasonable accommodations as they were required to do.

106. In or around March 2018, after DEFENDANT GILLBERT continued to tell PLAINTIFF that she could not do her job because she could not see, PLAINTIFF again asked if the small print could be blown up to a larger font.

107. DEFENDANT GILLBERT again denied PLAINTIFF'S reasonable accommodation request and did not offer any other solution, instead only telling PLAINTIFF she could not see well enough.

108. Later in April 2018, DEFENDANT CONTRERAS made remarks about PLAINTIFF allegedly not being able to see and PLAINTIFF, out of exasperation, told DEFENDANT CONTRERAS that she knew she "*can't see well, I don't need you to remind me.*"

109. The comments continued through the end of 2018, and PLAINTIFF continued to complain and ask DEFENDANTS to stop commenting on her disability, as well as request reasonable accommodations, to no end.

110. In or around March 2019, DEFENDANT CONTRERAS told PLAINTIFF that she was not going to be put on the schedule because she could not do anything but sell.

111. This explanation did not make sense to PLAINTIFF, as not only was selling a key part of the position, but PLAINTIFF was able to do all her duties with a reasonable

accommodation, and most of her duties with no accommodation.

112.    DEFENDANTS summarily reduced PLAINTIFF'S hours because of her disabilities and her engagement in protected activities.

113.    In or around April 2019, while PLAINTIFF was working her reduced hour schedule, she attempted to read the fine print on the clothing tags, despite knowing that her disability made it difficult for her, because she was worried about continued retaliation for asking for a reasonable accommodation.

114.    While PLAINTIFF was trying to read the fine print, DEFENDANT CONTRERAS began yelling at PLAINTIFF for attempting to read the print.

115.    Again, PLAINTIFF requested that the numbers be zoomed in on the iPad that CHICO'S used.

116.    Again, DEFENDANTS denied her request, despite the iPad having the capability to zoom in on fine print.

117.    In or around May 2019, DEFENDANTS again retaliated against PLAINTIFF and told her that CHICO'S had no hours for her because she could not see, and therefore could not ***"do much."***

118.    PLAINTIFF again told DEFENDANTS that she could perform her all duties with a mild reasonable accommodation, and most with no accommodation.

119.    On or about July 30, 2019, PLAINTIFF received a call from DEFENDANT CONTRERAS who told her that she would not be put on the schedule for any hours from August 4 through August 11 because the store was going to be doing inventory and everyone knew the PLAINTIFF ***"did not see well."***

120.    PLAINTIFF again told DEFENDANT CONTRERAS that the store was still going to be

open, and PLAINTIFF could do her regular duties such as selling clothing and performing returns.

121.   PLAINTIFF asked DEFENDANT CONTRERAS if the only reason she was being removed from the schedule was because she does not see numbers that well.

122.   DEFENDANT CONTRERAS said "*yes*."

123.   PLAINTIFF then continued that she did not understand because the store was still open and someone would need to be selling and performing returns.

124.   DEFENDANTS reduced PLAINTIFF'S hours and did not schedule her from August 4 through August 11 because of PLAINTIFF'S disabilities and engagement in protected activities.

125.   In or around early August 2019, DEFENDANTS, CONTRERAS and GILBERT, retaliated against PLAINTIFF because of her disabilities, her requests for reasonable accommodation, and her complaints of discrimination by putting her on a Performance Improvement Plan ("PIP") citing to PLAINTIFF'S disabilities as the reason.

126.   DEFENDANTS stated the reason for the PIP was because PLAINTIFF could not see the fine printed numbers on the clothing tags or on store printouts of inventory.

127.   DEFENDANTS were punishing PLAINTIFF because she had disabilities that made it hard for her to see.

128.   DEFENDANTS claimed that because PLAINTIFF could not see the small print, she could not perform any store locations and could not participate in inventory.

129.   PLAINTIFF told DEFENDANTS that she could do those duties with a reasonable accommodation.

130.   PLAINTIFF again asked that DEFENDANTS allow her to zoom in on the iPad to see the

fine print and to print the inventory sheets in a larger font, both of which were technologically possible to do.

131.   DEFENDANTS again refused PLAINTIFF'S reasonable accommodation requests and continued to tell PLAINTIFF that if she was not able to perform those duties within 90 days, she would be terminated.

132.   DEFENDANTS knew that PLAINTIFF would not be able to perform those duties without a reasonable accommodation.

133.   DEFENDANTS knew that PLAINTIFF performed all of her other duties well, including selling clothing, interacting with customers, and performing sales and returns on the registers. PLAINTIFF could even participate in most of the inventory needs, just not ones that required reading the small print without an accommodation.

134.   DEFENDANTS intentionally put PLAINTIFF on a PIP that would be impossible for PLAINTIFF to accomplish without a reasonable accommodation to provide a pre-textual reason to terminate PLAINTIFF'S employment when she inevitably failed to accomplish the goals.

135.   DEFENDANTS refused to accommodate PLAINTIFF.

136.   DEFENDANTS failed to engage in any interactive process to accommodate PLAINTIFF.

137.   Additionally, DEFENDANTS intentionally wrote the PIP in a font size that was too small for PLAINTIFF to read, and instead of enlarging the font, they simply told PLAINTIFF what was allegedly on the document and forced her to sign it.

138.   PLAINTIFF objected to signing a document she had not read, but DEFENDANTS gave her no option but to sign the PIP.

139.   PLAINTIFF, after being forced to sign a document she had not read, requested a copy of

the PIP.

140.  DEFENDANTS refused to provide PLAINTIFF a copy of the PIP citing to company policy.

141.  DEFENDANTS placed the PIP in a location only accessible to managers.

142.  PLAINTIFF is unable to review the PIP.

143.  Even if PLAINTIFF were to attempt to conform to the improvement requirements contained in the PIP, she has no access to that information.

144.  DEFENDANTS forced PLAINTIFF to sign a PIP they knew she could not read due to her disabilities, which was based exclusively on the fact that she had disabilities, and then kept it from her so she had no chance to review the document to attempt to improve.

145.  On or about August 23, 2019, DEFENDANT CONTRERAS told PLAINTIFF to refrain from performing a task of locating certain items from other stores because she could not see.

146.  PLAINTIFF did as instructed and did not locate the items.

147.  DEFENDANT GILLBERT then approached PLAINTIFF and told her that she was going to give PLAINTIFF a reprimand in the form of a written write-up for refusing to locate any items at different stores.

148.  PLAINTIFF explained that she was instructed to refrain from that task by DEFENDANT CONTRERAS.

149.  DEFENDANT GILLBERT continued to tell PLAINTIFF that she was going to write her up.

150.  DEFENDANT GILLBERT then continued to discriminate against PLAINTIFF and asked her why PLAINTIFF was *"even still at CHICO'S"* because PLAINTIFF was *"always*

*complaining"* about how she was being treated.

151.  PLAINTIFF responded that she was being discriminated against.

152.  DEFENDANT GILLBERT plainly and callously responded, **"no, it's not [discrimination]."**

153.  PLAINTIFF again told DEFENDANT GILLBERT that she would be able to locate items at other stores if DEFENDANTS would allow her to zoom in on the numbers.

154.  DEFENDANT GILLBERT told PLAINTIFF to "get over it" and again inaccurately stated that it could not be done.

155.  PLAINTIFF again told DEFENDANT GILLBERT that she was discriminating against PLAINTIFF and asked if they would treat someone who only had one leg this way.

156.  DEFENDANT GILLBERT told PLAINTIFF that they would not hire someone with only one leg.

157.  PLAINTIFF told DEFENDANT GILLBERT that it was discrimination and that because people had disabilities did not mean they were not capable.

158.  DEFENDANT GILLBERT did not forward PLAINTIFF'S complaints of discrimination.

159.  DEFENDANTS did not investigate PLAINTIFF'S complaint of discrimination.

160.  In or around late August 2019, DEFENDANT CONTRERAS cut PLAINTIFF'S hours to 4 hours per week.

161.  PLAINTIFF'S similarly situated coworkers who do not have disabilities and who did not engage in protected activities have approximately 16 hours per week.

162.  PLAINTIFF again complained and asked DEFENDANT CONTRERAS why her hours were being cut.

163.  DEFENDANT CONTRERAS told her "*you know why – so don't even ask."*

164.    PLAINTIFF understood this to mean that her hours were being cut because of her disabilities and because she requested a reasonable accommodation.

165.    DEFENDANTS discriminated against PLAINTIFF because of her disability.

166.    DEFENDANTS knew that PLAINTIFF had a hard time seeing, and instead of attempting to reasonably accommodate her, as required, instead constantly insulted her because of disability.

167.    DEFENDANTS retaliated against PLAINTIFF by continuing to create a hostile work environment, forcing PLAINTIFF to sign a document she disagreed with, cutting her hours, and putting her on a Performance Improvement Plan which stated she would be terminated if she was not able to see the small numbers – which DEFENDANTS knew she could not do without an accommodation.

168.    DEFENDANTS cut PLAINTIFF'S hours because of her disabilities instead of reasonably accommodating her.

169.    DEFENDANTS put PLAINTIFF on a PIP because of her disabilities instead of reasonably accommodating her and in retaliation for requesting accommodations and complaining of discrimination.

170.    DEFENDANTS were aware of their obligation to engage in an interactive process with PLAINTIFF and ignored their obligations with intent only to wrongfully reduce PLAINTIFF'S hours.

171.    DEFENDANTS reduced PLAINTIFF'S hours instead of attempting to accommodate her disabilities.

172.    DEFENDANTS put PLAINTIFF on a PIP with the threat of termination instead of attempting to accommodate her disabilities.

173. DEFENDANTS are aware of their legal duty and obligation to engage in an interactive process and to assess an employee's need for accommodations when the employee places DEFENDANTS on notice of a medical need/disability, which affects the employees' work.

174. In or around September 2019, PLAINTIFF made a written complaint and gave it to her managers.

175. Since PLAINTIFF'S written complaint, she has continued to be met with regular discriminatory comments from DEFENDANTS, CONTRERAS and GILLBERT.

176. PLAINTIFF continues to only receive four hours per week.

177. DEFENDANTS made no assessment to determine if an accommodation to PLAINTIFF would cause them undue hardship, difficulty or expense.

178. Accommodations available to PLAINTIFF would have caused no undue hardship on DEFENDANTS.

179. DEFENDANTS had no good faith business justification for reducing PLAINTIFF'S hours.

180. Causation between PLAINTIFF'S engagement in protected activity and then her reduced hours and placement on a PIP which threatened her employment is clear and absolute herein.

181. **COLLECTIVE DEFENDANTS' actions against PLAINTIFF was/is a continuing violation of PLAINTIFF'S rights.**

182. As a result of DEFENDANTS' actions, PLAINTIFF has been caused to be further emotionally distraught, depressed, anxious, jobless, extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

183. As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss

of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

184. DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

185. As such, PLAINTIFF demands Punitive Damages as against all DEFENDANTS, jointly and severally.

<strong>AS A <em>FIRST</em> CAUSE OF ACTION FOR <em>DISCRIMINATION</em><br>UNDER THE AMERICANS WITH DISABILITIES ACT<br>(<em>Against Defendant CHICO'S RETAIL SERVICES, INC.</em>)</strong>

186. PLAINTIFF REPETTO repeats, reiterates, and realleges each allegation made in the above paragraphs of this complaint.

187. PLAINTIFF REPETTO asserts that DEFENDANT violated the <u>Americans with Disabilities Act of 1990</u> (Pub. L. 101-336), as amended.

188. <u>Title 42 of the Americans with Disabilities Act of 1990</u>, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states:

> (a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

189. PLAINTIFF REPETTO'S myopia and astigmatism in her eyes are disabilities as defined by the <u>ADA</u>.

190. PLAINTIFF REPETTO'S disabilities affect one or more of her major life activities.

191. PLAINTIFF can perform all her duties with reasonable accommodations.

192.  PLAINTIFF made requests for reasonable accommodations, including but not limited to requesting to be able to zoom in on certain numbers or use an enlarged font on printed documents.

193.  DEFENDANTS were aware of PLAINTIFF'S disabilities, need reasonable accommodations and reasonable accommodation requests.

194.  DEFENDANTS refused to accommodate PLAINTIFF and instead began to plan how they would remove PLAINTIFF from employment - for discriminatory and retaliatory purposes.

195.  DEFENDANTS also exposed PLAINTIFF to a hostile work environment.

196.  But for PLAINTIFF REPETTO'S disability, perceived disability and/or need for a reasonable accommodation, DEFENDANTS would not have reduced her hours, put her on a Performance Improvement Plan threatening to terminate her employment and/or would not have subjected her to adverse employment actions.

197.  DEFENDANTS had no good-faith business justification to reduce PLAINTIFF'S hours or put her on a Performance Improvement Plan threatening to terminate her employment.

198.  Defendant CHICO'S supported, condoned, and ratified the unlawful discriminatory conduct of its officers, directors, representatives when they discriminated against and retaliated against PLAINTIFF.

199.  As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-

pecuniary losses.

200.   PLAINTIFF REPETTO has further experienced severe emotional and physical distress.

201.   As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to
the maximum award of damages under this law.

**AS A *SECOND* CAUSE OF ACTION FOR *RETALIATION*
UNDER THE AMERICANS WITH DISABILITIES ACT
(*Against Defendant CHICO'S RETAIL SERVICES, INC.*)**

202.   PLAINTIFF REPETTO repeats, reiterates, and realleges each allegation made in the above
paragraphs of this complaint.

203.   The ADA prohibits retaliation, interference, coercion, or intimidation against an employee,
who engages in protected activity.

204.   42 U.S.C. § 12203 provides:

> Retaliation. No person shall discriminate against any individual
> because such individual has opposed any act or practice made
> unlawful by the chapter or because such individual made a charge,
> testified, assisted, or participated in any manner in an investigation,
> proceeding, or shearing under the chapter.

> Interference, coercion, or intimidation. It shall be unlawful to
> coerce, intimidate, threaten, or interfere with any individual in the
> exercise or enjoyment of, or on account of her or her having
> exercised or enjoyed, or on account of her or her having aided or
> encouraged any other individual in the exercise or enjoyment of, any
> right granted or protected by the chapter.

205.   DEFENDANT CHICO'S violated the section as set forth herein.

206.   COLLECTIVE DEFENDANTS were on notice of PLAINTIFF'S disabilities.

207.   PLAINTIFF REPETTO advised DEFENDANTS, CONTRERAS and GILLBERT, during
her employment about her disabilities and need for a reasonable accommodation.

208.   PLAINTIFF REPETTO engaged in protected activity by repeatedly requesting a
reasonable accommodation.

209. PLAINTIFF REPETTO engaged in protected activity by repeatedly complaining that DEFENDANTS were discriminating against her because of her disabilities.

210. DEFENDANTS were on notice that reasonable accommodations should be made for PLAINTIFF REPETTO.

211. However, DEFENDANTS did not make any reasonable accommodation for PLAINTIFF REPETTO and refused to engage in any interactive process.

212. DEFENDANTS retaliated against PLAINTIFF REPETTO with unfair reprimands, unfair disciplines, adverse employment actions, increased scrutiny, a hostile work environment, a reduction of hours, and placement on a Performance Improvement Plan with the threat of termination due to her disabilities.

213. As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

214. DEFENDANTS had no good faith business justification for its actions against PLAINTIFF.

215. Employer DEFENDANT CHICO'S supported, condoned and ratified the unlawful discriminatory conduct of its officers, directors, representatives, Defendants CONTRERAS and GILLBERT.

216. As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

217.   PLAINTIFF REPETTO has further experienced severe emotional and mental distress.

218.   As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS *THIRD* CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

163.   PLAINTIFF REPETTO repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

164.   New York State Executive Law § 296 provides that, *inter alia*: "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's. . . disability . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

165.   PLAINTIFF REPETTO'S myopia and astigmatism in her eyes are disabilities as defined by the New York State Human Rights Law.

166.   PLAINTIFF REPETTO'S disabilities affect one or more of her major life activities.

167.   PLAINTIFF can perform all her duties with reasonable accommodations.

168.   PLAINTIFF made requests for reasonable accommodations, including but not limited to requesting to be able to zoom in on certain numbers or use an enlarged font on printed documents.

169.   DEFENDANTS were aware of PLAINTIFF'S disabilities, need reasonable accommodations and reasonable accommodation requests.

170.   DEFENDANTS refused to accommodate PLAINTIFF or engage in any interactive process and instead began to plan how they would remove PLAINTIFF from employment - for discriminatory and retaliatory purposes.

171.   DEFENDANTS also exposed PLAINTIFF to a hostile work environment.

172. But for PLAINTIFF REPETTO'S disability, perceived disability and/or need for a reasonable accommodation, DEFENDANTS would not have reduced her hours or put her on a Performance Improvement Plan threatening to terminate her employment.

173. DEFENDANTS had no good-faith business justification to reduce PLAINTIFF'S hours or put her on a Performance Improvement Plan threatening to terminate her employment.

174. Defendant CHICO'S supported, condoned, and ratified the unlawful discriminatory conduct of its officers, directors, representatives when they discriminated against and retaliated against PLAINTIFF.

175. As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

176. PLAINTIFF REPETTO has further experienced severe emotional and mental distress.

177. As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### *AS A FOURTH* CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

178. PLAINTIFF REPETTO repeats, reiterates, and realleges each allegation made in the above paragraphs of this complaint.

179. New York State Executive Law § 296 provides that, inter alia:

> 7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any

practices forbidden under this article or because he or she has filed
a complaint, testified or assisted in any proceeding under this article.

180.  DEFENDANT CHICO'S violated the section as set forth herein.

181.  COLLECTIVE DEFENDANTS were on notice of PLAINTIFF'S disabilities.

182.  PLAINTIFF REPETTO advised DEFENDANTS, CONTRERAS and GILLBERT, during
her employment about her disabilities and need for a reasonable accommodation.

183.  PLAINTIFF REPETTO engaged in protected activity by repeatedly requesting a
reasonable accommodation.

184.  PLAINTIFF REPETTO engaged in protected activity by repeatedly complaining that
DEFENDANTS were discriminating against her because of her disabilities.

185.  DEFENDANTS were on notice that reasonable accommodation should be made for
PLAINTIFF REPETTO.

186.  However, DEFENDANTS did not make any reasonable accommodation nor did they
engage in any interactive process for PLAINTIFF REPETTO.

187.  DEFENDANTS retaliated against PLAINTIFF REPETTO with unfair reprimands, unfair
disciplines, adverse employment actions, increased scrutiny, a hostile work environment,
a reduction of hours, and placement on a Performance Improvement Plan with the threat
of termination due to her disabilities.

188.  As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to
the maximum award of damages under this law.

189.  DEFENDANT had no good faith business justification for its actions against PLAINTIFF.

190.  Employer DEFENDANTCHICO'S supported, condoned and ratified the unlawful
discriminatory conduct of its officers, directors, representatives, DEFENDANTS,
CONTRERAS and GILLBERT.

191.    As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

192.    PLAINTIFF REPETTO has further experienced severe emotional and mental distress.

193.    As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

**AS A *FIFTH* CAUSE OF ACTION FOR DISCRIMINATION *(Aider and Abettor Liability)*
<u>UNDER THE NEW YORK STATE HUMAN RIGHTS LAW</u>
(*Against INDIVIDUAL DEFENDANTS, CONTRERAS and GILLBERT*)**

194.    PLAINTIFF REPETTO repeats, reiterates, and realleges each allegation made in the above paragraphs of this complaint.

195.    <u>New York State Executive Law</u> § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

196.    INDIVIDUAL DEFENDANTS utilized their position/status as managers to subject PLAINTIFF to unlawful discrimination and retaliation.

197.    INDIVIDUAL DEFENDANTS engaged in an unlawful discriminatory practice by discriminating against PLAINTIFF because of her disability, perceived disability and/or stated need for a reasonable accommodation.

198.    But for PLAINTIFF REPETTO'S disability, perceived disability and/or need for an accommodation for medical purposes, INDIVIDUAL DEFENDANTS would not have

created a hostile work environment, reduced PLAINTIFF'S hours, and put PLAINTIFF on a Performance Improvement Plan threatening to terminate her employment.

199. INDIVIDUAL DEFENDANTS who each serve in management for CORPORATE DEFENDANTS and with knowledge of its policies, knew or should have known that their actions (or lack thereof) violated policies and rules, as well as PLAINTIFF'S individual rights.

200. INDIVIDUAL DEFENDANTS each collectively and individually supported, condoned aided and abetted the discriminatory and retaliatory conduct of their principal, DEFENDANT CHICO'S, against PLAINTIFF.

201. As a result of INDIVIDUAL DEFENDANTS' actions, PLAINTIFF REPETTO was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

202. As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

203. PLAINTIFF REPETTO has further experienced severe emotional and mental distress.

204. As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A *SIXTH* CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

205. PLAINTIFF REPETTO repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

206.   The <u>Administrative Code of the City of New York</u> § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person, **to refuse to hire or employ or to bar or to discharge from employment** such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

207.   PLAINTIFF REPETTO'S myopia and astigmatism in her eyes are disabilities as defined by the <u>New York City Administrative Code</u>.

208.   PLAINTIFF REPETTO'S disabilities affect one or more of her major life activities.

209.   PLAINTIFF can perform all her duties with reasonable accommodations.

210.   PLAINTIFF made requests for reasonable accommodations, including but not limited to requesting to be able to zoom in on certain numbers or use an enlarged font on printed documents.

211.   DEFENDANTS were aware of PLAINTIFF'S disabilities, need reasonable accommodations and reasonable accommodation requests.

212.   DEFENDANTS refused to accommodate PLAINTIFF and instead began to plan how they would remove PLAINTIFF from employment - for discriminatory and retaliatory purposes.

213.   DEFENDANTS also exposed PLAINTIFF to a hostile work environment.

214.   But for PLAINTIFF REPETTO'S disability, perceived disability and/or need for a reasonable accommodation, DEFENDANTS would not have reduced her hours or put her on a Performance Improvement Plan threatening to terminate her employment.

215.   DEFENDANTS had no good-faith business justification to reduced PLAINTIFF'S hours or put her on a Performance Improvement Plan threatening to terminate her employment.

216.   DEFENDANT CHICO'S supported, condoned, and ratified the unlawful discriminatory

conduct of its officers, directors, representatives when they discriminated against and retaliated against PLAINTIFF.

217.    As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

218.    PLAINTIFF REPETTO has further experienced severe emotional and mental distress.

219.    As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A *SEVENTH* CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

220.    PLAINTIFF REPETTO repeats, reiterates, and realleges each allegation made in the above paragraphs of this complaint.

221.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

222.    DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by retaliating against PLAINTIFF because of PLAINTIFF'S engaging in protected activity.

223.    DEFENDANT CHICO'S violated the section as set forth herein.

224.    COLLECTIVE DEFENDANTS were on notice of PLAINTIFF'S disabilities.

225.    PLAINTIFF REPETTO advised DEFENDANTS, CONTRERAS and GILLBERT, during

her employment about her disabilities and need for a reasonable accommodation.

226.   PLAINTIFF REPETTO engaged in protected activity by repeatedly requesting a reasonable accommodation.

227.   PLAINTIFF REPETTO engaged in protected activity by repeatedly complaining that DEFENDANTS were discriminating against her because of her disabilities.

228.   DEFENDANTS were on notice that reasonable accommodations should be made for PLAINTIFF REPETTO.

229.   However, DEFENDANTS did not offer any reasonable accommodation for PLAINTIFF REPETTO.

230.   DEFENDANTS retaliated against PLAINTIFF REPETTO with unfair reprimands, unfair disciplines, adverse employment actions, increased scrutiny, a hostile work environment, a reduction of hours, and placement on a Performance Improvement Plan with the threat of termination due to her disabilities.

231.   As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

232.   DEFENDANT had no good faith business justification for its actions against PLAINTIFF.

233.   Employer DEFENDANT CHICO'S supported, condoned and ratified the unlawful discriminatory conduct of its officers, directors, representatives, DEFENDANTS CONTRERAS and GILLBERT.

234.   As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses,

emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

235.    PLAINTIFF REPETTO has further experienced severe emotional and mental distress.

236.    As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

**AS AN *EIGHTH* CAUSE OF ACTION FOR *DISCRIMINATION*
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
(***Aider and Abettor Liability Against Individual Defendants CONTRERAS and GILLBERT***)

237.    PLAINTIFF REPETTO repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

238.    The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

239.    DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

240.    INDIVIDUAL DEFENDANTS are liable for **aiding and abetting** the unlawful conduct of their Employer, DEFENDANT CHICO'S.

241.    INDIVIDUAL DEFENDANTS utilized their position/status as managers to subject PLAINTIFF to unlawful discrimination and retaliation.

242.    INDIVIDUAL DEFENDANTS engaged in an unlawful discriminatory practice by discriminating against PLAINTIFF because of her disability, perceived disability and/or stated need for a reasonable accommodation.

243.    But for PLAINTIFF REPETTO'S disability, perceived disability and/or need for an

accommodation for medical purposes, INDIVIDUAL DEFENDANTS would not have created a hostile work environment, reduced PLAINTIFF'S hours, and put PLAINTIFF on a Performance Improvement Plan threatening to terminate her employment.

244. INDIVIDUAL DEFENDANTS who each serve in management for CORPORATE DEFENDANTS and with knowledge of its policies, knew or should have known that their actions (or lack thereof) violated policies and rules, as well as PLAINTIFF'S individual rights.

245. INDIVIDUAL DEFENDANTS each collectively and individually supported, condoned aided and abetted the discriminatory and retaliatory conduct of their principal, CHICO'S, against PLAINTIFF.

246. As a result of INDIVIDUAL DEFENDANTS actions, PLAINTIFF REPETTO was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

247. As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of employment opportunities, loss of benefits, the loss of a salary/pay, special damages, adverse employment actions, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

248. PLAINTIFF REPETTO has further experienced severe emotional and mental distress.

249. As such, PLAINTIFF REPETTO has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

## PUNITIVE DAMAGES

250. DEFENDANTS conduct was malicious, willful, outrageous and conducted with full

knowledge of the law.

251.    As such, punitive damages are appropriate as a result of DEFENDANTS' above-described conduct and PLAINTIFF REPETTO demands Punitive Damages as against all DEFENDANTS, jointly and severally.

### JURY DEMAND

252.    PLAINTIFF REPETTO hereby demands a jury trial.

**WHEREFORE**, PLAINTIFF REPETTO respectfully requests a judgment against the Defendants:

A.    Declaring that DEFENDANTS engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, New York State Human Rights Law, and the New York City Administrative Code, in that DEFENDANTS discriminated against PLAINTIFF on the basis of her disability, perceived disability and need for reasonable accommodation;

B.    Awarding damages to PLAINTIFF REPETTO resulting from DEFENDANTS' unlawful and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding PLAINTIFF REPETTO compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.    Awarding PLAINTIFF REPETTO punitive damages;

E.    Awarding PLAINTIFF REPETTO attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F.    Awarding PLAINTIFF REPETTO such other and further relief as the Court may deem equitable, just and proper to remedy the DEFENDANTS' unlawful employment practices.

Dated: New York, New York
May 19, 2020

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

*/S/*

By: _____

Gregory Calliste, Jr., Esq.
Yusha D. Hiraman, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
GCalliste@tpglaws.com
YHiraman@tpglaws.com